

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00069-CV

John J. **PARKER** Jr.,
Appellant

v.

**OHIO DEVELOPMENT, LLC**,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 12-298A
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice
Dissenting Opinion by: Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Liza A. Rodriguez, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: April 30, 2024

REVERSED AND REMANDED

This appeal concerns a business dispute that resulted in litigation between appellant John J. Parker, Jr. and appellee Ohio Development, LLC ("Ohio Development"). The trial court granted Ohio Development's Rule 91a motion to dismiss on the ground that Parker's claims had no basis in law. On appeal, Parker asserts the trial court erred in granting the motion to dismiss because (1) Ohio Development did not move on his live pleadings; (2) the trial court considered evidence

attached to the motion in contravention of Rule 91a.6;[1] and (3) applying the Rule 91a standard, his dismissed claims allege a basis in law and fact. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND[2]

From September 1990 until October 2005, Parker, his father, and several related entities controlled nearly 1900 acres of land in western Kendall County, Texas, commonly known as Tapatio Springs. Of those entities, the primary companies relevant to this appeal are (1) Tapatio Springs Real Estate Holdings, Ltd. ("TSREH") and (2) a real estate partnership, Kendall County Development Company, Ltd. ("KCDC").

### *The Investor*

In mid-2005, Michael Shalit approached Parker about partnering in TSREH. After due diligence, Parker agreed to partner with Shalit to obtain a needed capital infusion. Prior to closing on the partnership deal, Shalit infused TSREH with money; Shalit's loan was secured by a conveyance of land inside the development from KCDC to Shalit. The parties intended Shalit to re-convey the property back to KCSC after the partnership deal closed. Shortly after the deal closed, all but one of the properties were returned to KCDC.

Shalit and his then-wife, Robyn Shalit, owned and controlled several entities. The TSREH partnership closing involved a complex series of arrangements between various related entities that essentially resulted in Parker and his father, on the one hand, and the Shalits, on the other hand, assuming a 50/50 partnership in all aspects of Tapatio Springs development. Shalit assumed the role of general partner in both KCDC and TSREH, and Parker was a limited partner. After

---

[1] As explained below, this contention is only relevant to Ohio Development's capacity affirmative defense.

[2] Because we are required to accept Parker's factual allegations as true, our background is premised on Parker's fifth amended petition. Our recitation should not be taken as an endorsement of its veracity beyond the context of our review.

Shalit assumed the role of general partner, he began a course of self-dealing and siphoning money out of the partnerships; much of the self-dealing involved shell corporations controlled by Shalit through transactions violating the partnership agreements.

### *The Property*

A 370-acre undeveloped area owned by KCDC lays in the northwest portion of Tapatio Springs. Lakeland West Capital held the note on the parcel. After the note came due, the holder refused to re-finance, the note was purchased by Ohio Development, and the property went into foreclosure. Ohio Development appointed William Harmeyer as substitute trustee. At the start of the February 13, 2014 foreclosure sale, Shalit appeared at the courthouse with a check to bring the note then-held by Ohio Development current and stop the foreclosure proceeding, and Harmeyer and Shalit entered the courthouse to work out the details.

However, Shalit's check was a sham. Several hours later—after competing bidders departed the courthouse—Shalit and Harmeyer returned outside and auctioned the property. Because of the scheme, Ohio Development (represented by its appointed substitute trustee, Harmeyer) was the sole remaining bidder, and Ohio Development purchased the note in a "friendly foreclosure" that deprived KCDC of the auction value of the 370-acre property.

### *The Lawsuit*

During litigation with Shalit, Parker discovered newly acquired information establishing Ohio Development is a shell company controlled by Shalit. Within months of foreclosure, Ohio Development granted Shalit, individually, an option to repurchase the property at a discount off its fair market value. Shalit and Ohio Development's scheme deprived KCDC of the money it would have received at a fair auction of the property and allowed Shalit to individually acquire the property below fair market value. Later, in 2017, Shalit conveyed additional properties from KCDC to Ohio Development without an exchange of consideration.

In his fifth amended petition, Parker, derivatively on behalf of KCDC, asserted claims for common law fraud and civil conspiracy against Ohio Development. Parker alleged derivative standing as a limited partner on the basis that KCDC's general partner, Shalit, would not bring claims on behalf of KCDC against himself and his shell company, Ohio Development, and the court-appointed receiver had stated to Parker's counsel that she would rather not bring the claims. The trial court dismissed Parker's derivative claims against Ohio Development as having no basis in law. After the order was made final, this appeal followed.

### STANDARD OF REVIEW

Rule 91a provides parties a procedural vehicle to dismiss baseless causes of action. TEX. R. CIV. P. 91a.1. Although claims may be factually or legally baseless, the only issue in this appeal is whether Parker's claims have no basis in law. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* To establish a cause of action lacks a basis in law, the defendant must establish the plaintiff's claim is foreclosed as a matter of law because either (1) the cause of action in the petition is not recognized by Texas law or (2) the cause of action is recognized, but the plaintiff has alleged facts that defeat those claims under settled law—in other words, the plaintiff has "pleaded itself out of court." *In re Shire PLC*, 633 S.W.3d 1, 18 (Tex. App.—Texarkana 2021, no pet.). A motion to dismiss must "state specifically the reasons the cause of action has no basis in law, no basis in fact, or both." TEX. R. CIV. P. 91a.2. "Rule 91a establishes a dismissal procedure that falls between the special exception procedure under Rules 90 and 91 and summary judgment procedure under Rule 166a." *Id.* at 25. Rule 91a and Rule 166a are wholly different procedural vehicles. *See In re Shire*, 633 S.W.3d at 11–28 (surveying the evolution of and distinguishing dismissal and pleading challenges under Rules 90, 91, 91a, and 166a).

"In ruling on a Rule 91a motion to dismiss, a court may not consider evidence but 'must decide the motion based solely on the pleading of the cause of action, together with any [permitted] pleading exhibits.'" *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (citing TEX. R. CIV. P. 91a.6).

"We review the merits of a Rule 91a ruling de novo; whether a defendant is entitled to dismissal under the facts alleged is a legal question." *Id.* We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, accept the plaintiff's factual allegations as true, and, if needed, draw reasonable inferences from the factual allegations to determine if the pleadings state, as applicable here, a basis in law. *Vasquez v. Legend Nat. Gas III, LP*, 492 S.W.3d 448, 450 (Tex. App.—San Antonio 2016, pet. denied) (citing TEX. R. CIV. P. 91a.1).

## ANALYSIS

Before turning to the merits of the 91a motion, we first address Parker's contention that his amended pleadings defeated Ohio Development's motion.

### What Effect did Parker's Pleadings Amendment Have on Ohio Development's 91a Motion?

On appeal, Parker argues:

> After Ohio Development filed its Motion to Dismiss, Parker filed his Fifth Amended Petition, clarifying the derivative nature of his claims against Ohio Development. Ohio Development never moved to Dismiss Parker's Fifth Amended Petition. Pursuant to Rule 91a.5(b), Ohio Development did not file an Amended Rule 91a Motion to Dismiss. Ohio Development's Motion only attacks Parker's Fourth Amended Petition and is therefore of no consequence to Parker's Fifth Amended Petition.

We reject Parker's argument based on the plain text of Rule 91a. Parker filed his fifth amended petition on September 29, 2021, and the court heard the motion on October 8, 2021. Because Parker amended the challenged causes of action more than three days before the date of the hearing, Ohio Development could elect, before the date of the hearing, to (1) withdraw the

motion; (2) amend the motion directed to the amended cause of action; or (3) stand on the motion. *See* TEX. R. CIV. P. 91a.5(b). Absent the agreement of the parties, the trial court was required to rule on the motion unless Ohio Development withdrew the motion or Parker timely nonsuited the challenged claims. *See id.* R. 91a.5(a), (c).

Put to the election of withdrawing or amending its motion, Ohio Development chose to stand on its existing motion. Therefore, the trial court's mandatory consideration of the motion required the trial court to apply factual allegations contained in the live pleading—the fifth amended petition—to the pending motion to dismiss.[3] Consequently, our de novo review likewise considers factual allegations alleged in the fifth amended petition. *See In re Farmers*, 621 S.W.3d at 266.

### *Parker's Causes of Action*[4]

Having determined the scope of our review, we next turn to the causes of action alleged in the fifth amended petition.

#### *Common Law Fraud*

In its motion to dismiss, Ohio Development asserts Parker has "not pleaded any representation (allegedly false or otherwise) made by [Ohio Development] to [Parker], and ha[s] failed to plead any of the other elements of a claim for common-law fraud, including reliance or injury." *See* TEX. R. CIV. P. 91a.2 (requiring motion to "state specifically the reasons the cause of action has no basis in law"). Thus, Ohio Development concludes, Parker's fraud claim is legally baseless. We disagree.

---

[3] The fourth amended petition is no longer regarded as a part of the pleading in the record of this cause. *See* TEX. R. CIV. P. 65 (absent exceptions inapplicable here, "[u]nless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted *shall no longer be regarded as a part of the pleading in the record of the cause*") (emphasis added).

[4] Ohio Development also moved to dismiss claims of statutory fraud and fraudulent transfer; however, those claims were not asserted in the fifth amended petition. *See* TEX. R. CIV. P. 91a.5(c) (trial court must rule on motion unless cause of action has been nonsuited).

As stated, to establish a cause of action lacks a basis in law, Ohio Development must establish Parker's common law fraud claim is foreclosed as a matter of law because either (1) fraud is not recognized by Texas law or (2) fraud is recognized, but Parker has alleged facts that defeat the claim under settled law. *See In re Shire*, 633 S.W.3d at 18. As to the first prong, common law fraud is a recognized cause of action under Texas law. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). As a result, to establish Parker's fraud claim lacks a basis in law, Ohio Development must establish it is foreclosed as a matter of law because Parker pleaded himself out of court by alleging facts *that defeat his fraud claim under settled law*—that his fraud claim is legally impossible. *In re Shire*, 633 S.W.3d at 18. After reviewing the pleadings and drawing reasonable inferences from the factual allegations, we cannot discern facts by which Parker pleaded himself out of court.

In truth, Ohio Development's motion "asserts that the petition fails to state enough detail regarding the facts upon which the claim is based. This is not an argument upon which dismissal can be granted under Rule 91a." *Id.* at 35. Rather, Ohio Development's contention that Parker failed to sufficiently plead elements of its claim "falls squarely within the special exception procedure."[5] *See id.* (citing TEX. R. CIV. P. 91). Accordingly, we hold the trial court erred in dismissing Parker's fraud claim under Rule 91a. *See id.*

### Civil Conspiracy

Parker first alleged civil conspiracy in his fifth amended petition, and because it elected not to amend its motion, Ohio Development did not move to dismiss the claim. Although dismissal

---

[5] The distinction between special exception dismissal and Rule 91a dismissal is not a matter of hyper-technicality. It is well-settled that parties subjected to curable pleading complaints under the special exception procedure are entitled to an opportunity to replead before dismissal is appropriate, and in such a case, dismissal is without prejudice. *See In re Shire*, 633 S.W.3d at 13. Here, the trial court dismissed Parker's claims with prejudice and without affording Parker an opportunity to cure alleged defects.

of a cause of action not subject to the motion to dismiss would typically constitute error, conspiracy is a "derivative tort" rather than an independent cause of action. *1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 372 (Tex. App.—El Paso 2022, no pet.). To prevail on a civil conspiracy claim, a plaintiff must show the defendant was liable for some underlying tort. *Id.* It follows the dismissal of Parker's underlying fraud claim should result in the dismissal of his civil conspiracy claim. But because we have held the trial court erred in dismissing Parker's underlying fraud claim, and because Ohio Development did not seek dismissal of Parker's civil conspiracy claim, we hold the trial court erred in dismissing Parker's civil conspiracy claim.

### Ohio Development's Affirmative Defenses[6]

Having determined Parker's derivative fraud and conspiracy claims survive 91a dismissal, we turn to whether they are nevertheless foreclosed by Ohio Development's affirmative defenses.

#### Statute of Limitations

Ohio Development was first joined as a party on April 16, 2021. In its motion to dismiss, Ohio Development asserts the statute of limitations precludes recovery on Parker's claims because it lapsed no later than four years after the February 13, 2014 foreclosure sale of the 370-acre tract.[7] On appeal, Ohio Development further argues Parker failed to sufficiently plead the discovery rule.

As we have explained, to the extent Ohio Development complains about a lack of fair notice or specificity in Parker's pleadings relating to the invocation of the discovery rule, those complaints are appropriately addressed through special exceptions procedure. *See In re Shire*, 633

---

[6] Ohio Development also moved to dismiss Parker's claims on the basis that he individually lacked standing; however, Parker only asserts derivative claims against Ohio Development in the fifth amended petition under the title "**FRAUD – CONSPIRACY / SHALIT & OHIO DEVELOPMENT DERIVATIVE CLAIMS BROUGHT ON BEHALF OF KCDC**." *See* TEX. R. CIV. P. 91a.5(c) (trial court must rule on motion unless cause of action has been nonsuited).

[7] Fraud is subject to a four-year limitations period, and the limitations period for conspiracy is the same as the underlying tort—here, four years. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4) (fraud); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) (conspiracy).

S.W.3d at 35. The question before us is, considering Parker's factual allegations, whether Ohio Development's limitations defense renders Parker's claims legally impossible.

Parker does not plead a specific date when he discovered Ohio Development was Shalit's shell company. However, construing the pleadings liberally in favor of Parker, looking to his intent, and drawing reasonable inferences from the pleaded facts, we can reasonably discern: (1) after becoming general partner of KCDC, Shalit undertook a course of self-dealing directly to himself and to shell companies controlled by him; (2) based on new information acquired during litigation with Shalit, Parker discovered Ohio Development is a shell company controlled by Shalit; and (3) Shalit's control of Ohio Development was concealed from Parker through a sophisticated web of related entities. *See Vasquez*, 492 S.W.3d at 450.

Applying the appropriate standard of review, we conclude Ohio Development failed to demonstrate the application of the statute of limitations renders Parker's claim legally baseless. *See In re Shire*, 633 S.W.3d at 21 ("[I]f the defendant cannot demonstrate that the plaintiff's recovery on the claim in its petition are foreclosed as a matter of law, then it may still move for summary judgment, but it is not entitled to dismissal under Rule 91a.").

*Capacity*

Before we address the merits of Ohio Development's capacity argument, we must first consider Parker's assertion that the trial court erred in considering evidence attached to the motion relevant to Ohio Development's capacity affirmative defense.

*Can Ohio Development's Answer be Considered?*

On appeal, Parker argues, "Having the trial court consider evidence in a Motion to Dismiss is also not allowed. Defendant cannot attach evidence to a responsive pleading and then point to the attached evidence to support a Rule 91a Motion." In response, Ohio Development correctly

points out that, relevant to this appeal, the motion made only one reference to its answer—specifically, the receivership order entered by the trial court attached to the answer.

In *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, the supreme court clarified the appropriate scope of Rule 91a review:

> Rule 91a limits a court's factual inquiry to the plaintiff's pleadings but does not so limit the court's legal inquiry. In deciding a Rule 91a motion, a court may consider the defendant's pleadings if doing so is necessary to make the legal determination of whether an affirmative defense is properly before the court. We therefore conclude that Rule 91a permits motions to dismiss based on affirmative defenses "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Of course, some affirmative defenses will not be conclusively established by the facts in a plaintiff's petition. Because Rule 91a does not allow consideration of evidence, such defenses are not a proper basis for a motion to dismiss.

595 S.W.3d 651, 656 (Tex. 2020) (internal citation omitted). Applied here, the trial court could properly consider Ohio Development's answer to make the legal determination of whether capacity is properly before the court (and it was). In accord with the plain text of Rule 91a, *Bethel* instructs the trial court to limit its factual inquiry to the plaintiff's pleadings. Therefore, the trial court could not have considered factual allegations or evidence beyond Parker's pleadings in ruling on the motion. We note, however, nothing in the record indicates the trial court exceeded the scope of review by considering facts or evidence outside of the petition.

The dissent would hold Parker failed to preserve error by not objecting to Ohio Development attaching its answer to its motion. However, under these facts, we need not reach the question of whether error preservation is required under Rule 91a.6.[8] *See* TEX. R. APP. P. 47.1

---

[8] We express no opinion as to whether and how preservation is required where the record establishes the trial court considered evidence in contravention of Rule 91a.6. *Compare Sw. Airlines Pilots Ass'n v. Boeing Co.*, No. 05-21-00598-CV, 2022 WL 16735379, at *7 (Tex. App.—Dallas Nov. 7, 2022, pet. filed) (implicitly acknowledging preservation requirement under Rule 91a.6 by concluding party preserved error by reciting standard of review in response to motion), *with Davis v. Homeowners of Am. Ins. Co.*, No. 05-21-00092-CV, 2023 WL 3735115, at *5 (Tex.

(opinion should be brief as practicable and address raised issues necessary to final disposition). Under *Bethel*, (1) the trial court could consider Ohio Development's answer to make the legal determination of whether capacity was before the court; (2) there is no indication in the record the trial court exceeded its authority by considering anything beyond factual allegations asserted in the fifth amended petition; (3) properly considered, the answer was not "evidence" prohibited by Rule 91a.6; and, therefore, (4) Parker did not need to object in the trial court.

That we need not reach the issue of preservation on this record is underscored by contrast with *Owings v. Kelly*, No. 07-20-00115-CV, 2020 WL 6588610, at *2 n.1 (Tex. App.—Amarillo Nov. 10, 2020, no pet.). In *Owings*, the appellate court wrote:

> That the court *requested* evidence (i.e., the prior judgment) at the hearing is rather clear. Equally clear is that the Owingses *failed to object to the request*. So, any complaint they had regarding the court's request was and is waived.

*Id.* (emphasis added) (internal citation omitted). Thus, in *Owings*, the record reflected the trial court requested and improperly considered *evidence*, and our sister court held that the plaintiff waived complaint by failing to object when the judge explicitly erred in open court.

By contrast, here, Ohio Development attached its answer to the motion to dismiss, and the trial court unquestionably could have properly considered the answer to determine whether capacity was before it. Further, this record contains no reporter's record of the hearing evidencing the trial court's misuse of the answer as the trial court used evidence in *Owings*. And, perhaps more importantly, the trial court's order here does not recite that it considered evidence in ruling on the motion.

---

App.—Dallas May 31, 2023, no pet.) (implicitly rejecting preservation requirement under Rule 91a.6), *and id.* at *8 (Pedersen, J., dissenting) (dissenting on basis of failure to preserve under Rule 91a.6).

In other words, because the trial court's consideration (and our de novo review) of the answer is limited to the legal inquiry of whether the affirmative defense of capacity is before the court, the result of the 91a analysis is unaffected whether legal inquiry is taken by judicial notice of the answer in the court's file or the attachment of the answer to the motion to dismiss. Parker need not have—*and could not have successfully*—objected to the legal inquiry of whether capacity was properly before the trial court.[9] We next turn to the merits.

*Merits of Capacity Defense*

According to Ohio Development's motion, Parker *individually* lacks capacity because the receivership order awards exclusive authority to the receiver to pursue claims.[10] But Parker's fifth amended petition does not assert the claims individually; they were instead brought derivatively on behalf of KCDC. Under the title "**FRAUD – CONSPIRACY / SHALIT & OHIO DEVELOPMENT DERIVATIVE CLAIMS BROUGHT ON BEHALF OF KCDC**," Parker particularly pled:

> Ohio Development bid in its debt to purchase the property **depriving *KCDC* of the actual auction value** of the property. As further evidence of its conspiracy, shortly after purchasing the property, Ohio Development gave Shalit an option to purchase the property at a discount off its fair market value. . . .
>
> Shalit and Ohio Development conspired to **defraud *KCDC* out of the money it would have received at a fair auction of the property**. . . .
>
> Parker was a limited partner at all times relevant to this lawsuit in KCDC. Pursuant to Texas Business Organizations Code § 153.402, **Parker has standing to bring derivative claims *on behalf of KCDC***. Pursuant to TEX. BUS. ORG. CODE § 153.401, it is unlikely the general partner of KCDC, being Mr. Shalit, would bring these

---

[9] Citing *Bethel* for the proposition "the trial court may properly consider Ohio's First Amended Answer" to "make the legal determination of whether an affirmative defense is properly before the court," Ohio Development argued "Ohio Development's attached evidence is <u>not</u> in contravention of Rule 91a" (emphasis in original).

[10] The motion defines "Plaintiffs" as "Jack Parker" and "Jay Parker," or collectively "the Parkers." With respect to capacity, the motion asserts (interchangeably) that "*Plaintiffs*" and "*the Parkers*" (being defined as the individual human-beings Jack Parker and Jay Parker) lack capacity.

claims since he is named as being liable for this ***conspiracy against KCDC***. Additionally, the Court appointed Successor Receiver has indicated to the undersigned she would rather not bring these claims. Thus, the **derivative action *on behalf of KCDC* is the only way Parker is able to redress *the partnership's claims*** against Shalit and Ohio Development. TEX. BUS. ORG. CODE § 153.403. [Emphasis added throughout.]

To be clear, Parker's claims were first classified as derivative in the fifth amended petition. Yet, Ohio Development chose to stand on its existing motion to dismiss (aimed only at Parker's individual allegations in the fourth amended petition) notwithstanding these substantive amendments. *See* TEX. R. CIV. P. 91a.5(b). To the extent the trial court dismissed Parker's derivative claims based on a lack of capacity, it was inappropriate under Rule 91a because the motion was directed only to individual claims, but Parker only alleged his claims derivatively on behalf of KCDC.

Nevertheless, had Ohio Development amended its motion to address the claims derivatively, given the factual allegations in the pleadings discussed above, the trial court would have erred in dismissing Parker's derivative claims under Rule 91a on the basis of capacity.

Applying the appropriate standard of review, we conclude Ohio Development failed to demonstrate Parker's claim is legally baseless because of a lack of capacity. *See In re Shire*, 633 S.W.3d at 21 ("[I]f the defendant cannot demonstrate that the plaintiff's recovery on the claim in its petition are foreclosed as a matter of law, then it may still move for summary judgment, but it is not entitled to dismissal under Rule 91a.").

## CONCLUSION

Parker's fifth amended petition alleged common law fraud and civil conspiracy claims against Ohio Development derivatively on behalf of KCDC. Taking legal notice of Ohio Development's defenses and taking the factual allegations in Parker's petition as true, Parker's

derivative claims state a basis in law. We accordingly reverse the order of the trial court and remand for further proceedings consistent with this opinion.

Lori I. Valenzuela, Justice